# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | | |
|---|---|---|
| **THEADORE W. DENTON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:11-cv-01066-SI |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

Merrill Schneider, P.O. Box 14490, Portland, OR 97239. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR  97204-2902; Jeffery R. McClain, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA  98104-7075. Attorneys for Defendant.

**SIMON, District Judge.**

Mr. Theodore W. Denton seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income. Because the Commissioner failed to fully develop the record, the Commissioner's decision is reversed and this case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

## I.    BACKGROUND

### A.    The Application

Mr. Denton protectively filed an application for Supplemental Security Income ("SSI") on January 30, 2008, alleging disability beginning on January 1, 1995.[1] Tr. 16. He alleged disability due to depression, anxiety disorder, personality disorder, cognitive disorder, and pain and spasms in his neck. Tr. 197. The Commissioner denied his application initially and upon reconsideration; thereafter, he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 127–33. After an administrative hearing, held March 24, 2010, the ALJ found Mr. Denton to be not disabled. Tr. 27, 28–59. The Appeals Council denied Mr. Denton's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. Mr. Denton now seeks judicial review of that decision.

### B.    The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

---

[1] Mr. Denton was previously found disabled on January 27, 2006. Tr. 65–68. His benefits ceased after he spent more than one year incarcerated. Tr. 16.

OPINION AND ORDER, Page 2

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each

step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks

the following series of questions:

1.  Is the claimant performing "substantial gainful activity?"  20 C.F.R.
    § 416.920(a)(4)(i). This activity is work involving significant mental or
    physical duties done or intended to be done for pay or profit. 20 C.F.R.
    § 416.910. If the claimant is performing such work, she is not disabled
    within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the
    claimant is not performing substantial gainful activity, the analysis
    proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. § 416.920(a)(4)(ii). Unless expected to result in
    death, an impairment is "severe" if it significantly limits the claimant's
    physical or mental ability to do basic work activities. 20 C.F.R.
    § 416.921(a). This impairment must have lasted or must be expected to
    last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If
    the claimant does not have a severe impairment, the analysis ends. 20
    C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the
    analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
    then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the
    impairment does not meet or equal one or more of the listed impairments,
    the analysis proceeds beyond step three. At that point, the ALJ must
    evaluate medical and other relevant evidence to assess and determine the
    claimant's "residual functional capacity" ("RFC"). This is an assessment
    of work-related activities that the claimant may still perform on a regular
    and continuing basis, despite any limitations imposed by his or her
    impairments. 20 C.F.R. § 416.920(e). After the ALJ determines the
    claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC
    assessment? If so, then the claimant is not disabled. 20 C.F.R.
    § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant

work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C.    The ALJ's Decision

The ALJ applied the sequential process in his June 3, 2010 decision. Tr. 16–23. At step one, the ALJ found that Mr. Denton has not engaged in substantial gainful activity since the application date. Tr. 18. At step two, the ALJ found that Mr. Denton's degenerative disk disease of the cervical spine, headaches, anxiety, depression, low-average intellectual functioning, pain disorder, and personality disorder are severe impairments. *Id.* At step three, the ALJ found that

Mr. Denton does not have an impairment or combination of impairments that meets or equals one of the specific impairments listed in the regulations. *Id.*

The ALJ then determined that Mr. Denton has the residual functional capacity ("RFC") to perform light work with the following additional limitations: no overhead reaching and occasional reaching in other directions; short, simple instructions and routine tasks; no contact with the public; and only superficial interaction with coworkers. Tr. 19. In reaching this conclusion, the ALJ considered Mr. Denton's statements, but found that they were not fully credible. Tr. 20. In addition, the ALJ examined the lay testimony of Ms. Althea Bear and Ms. Debra Fern but found that they were not credible. Tr. 21–22. The ALJ gave significant weight to the opinions of Drs. Bates-Smith and Sally, who provided consultative examinations, and the opinions of the state agency physicians. *Id.*

At step four, the ALJ found that Mr. Denton had no past relevant work. Tr. 18. Therefore, the ALJ called a vocational expert ("VE") to testify at the hearing. Tr. 55–58. The ALJ asked the VE to consider a hypothetical claimant with restrictions similar to those formulated in Mr. Denton's RFC; the VE responded that a person with those restrictions would be able to perform the work of a small products assembler, a solderer, and a paper sorter, recycler. Tr. 56–57.

Based on the VE's testimony, the ALJ found that Mr. Denton was capable of performing "jobs that exist in significant numbers in the national economy." Tr. 22. The ALJ therefore concluded that Mr. Denton was not disabled. Tr. 23.

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

### III.   DISCUSSION

Mr. Denton argues that the ALJ erred by: (1) finding his testimony not credible; (2) failing to consider the reports of Drs. Dhaliwal and Suckow, treating physicians, and improperly considering the reports of Drs. Sally and Bates-Smith, examining physicians; (3) improperly rejecting lay witness testimony; (4) erroneously relying on VE testimony that is in conflict with the Dictionary of Occupational Titles ("DOT"); and (5) and failing to fully develop the record.

**A.      Mr. Denton's Credibility**

Mr. Denton argues that the ALJ discredited his testimony without providing clear and convincing reasons for doing so. Pl.'s Br. at 14–17. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

At the hearing, Mr. Denton testified to depression, panic disorders, headaches, and degenerative arthritis in his neck. Specifically, he testified that two to four times per month his neck will pop, rendering him immobile for two to three days. Tr. 45–46. Because of the degenerative arthritis, his headaches have been getting progressively worse; when they occur, he cannot eat or sleep for several days. Tr. 50–52. Further, he testified that he cannot use public transportation because of panic attacks. Tr. 49.

OPINION AND ORDER, Page 8

The ALJ, applying the first step of the credibility framework, found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 20. In applying the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." *Id.* In support of this determination, the ALJ offered two reasons: (1) Mr. Denton's inconsistent statements about his marijuana use; and (2) his inconsistent activities of daily living. Tr. 20–21. Regarding Mr. Denton's headaches, the ALJ additionally found that there was no evidence to support the reported "frequency, severity, and duration." Tr. 21.

### 1.    Inconsistent Statements

The ALJ found that Mr. Denton's credibility "is undermined by inconsistencies in his reports of drug use." Tr. 21. Inconsistencies in a claimant's testimony regarding drug use are a permissible basis upon which an ALJ may make an adverse credibility finding. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *see also Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony regarding drug use makes the claimant appear less than candid).

Here, Mr. Denton testified that he was not currently using marijuana nor had he used it since before January 2006. Tr. 51–52. Mr. Denton, however, disclosed to Dr. Bates-Smith in an April 15, 2010 consultative examination that his last use of marijuana was "2 months ago." Tr. 375. This evidence contradicts Mr. Denton's statement that he had not used marijuana since 2006.

Mr. Denton argues that there is no inconsistency because he was using the drugs therapeutically—thus, they were not "illegal"—and because his poor memory is symptomatic of his cognitive disorders. Pl.'s Reply at 3. There is, however, no evidence in the record that Mr. Denton was using marijuana within in the ambit of a physician-supervised program. Nor is there evidence that Mr. Denton's testimony is a result of faulty memory. He cites Dr. Leland's consultative examination for support, but in that examination Dr. Leland found "remote memory appeared to be reasonably intact. He could recall historical events that are fairly consistent with what is found in the records." Tr. 317. Thus, the ALJ's interpretation of the evidence is reasonable and supported by substantial evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted) (holding a court may not substitute its own judgment where the ALJ's determination is *reasonable* and supported by substantial evidence).

### 2.        Activities of Daily Living

Additionally, the ALJ found that despite Mr. Denton's subjective symptom testimony, "he has been able to lead an active lifestyle."[2] Tr. 21. Specifically, the ALJ found that Mr. Denton assisting a friend with her children by providing after-school supervision was inconsistent with his alleged limitations. *Id.* Similarly, the ALJ found that Mr. Denton's activities—tinkering in a shop, mowing lawns, and collecting scrap metal—all undermined his credibility. *Id.* Daily activities can form the basis of an adverse credibility finding where the claimant's activities either contradict his or her other testimony or meet the threshold for

---

[2]  The ALJ's blanket assertion that Mr. Denton lives an active life is unsupported by the record. *See, e.g.*, Tr. 215–16 (describing daily activities solely as including watching television and using a computer). The Court, however, may affirm an ALJ's credibility finding where it contains an error but is otherwise based on substantial evidence. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008)

transferable work skills. *See Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility).

While Mr. Denton's activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)) ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). In 2008, Mr. Denton reported that he helped his friend get her three children ready for school and then, on their return, he "provide[d] some supervision . . . until [she] gets comes home from work." Tr. 316. At his hearing in 2010, he demurred at the suggestion he helped ready the children for school; instead, he stated that he was in the house when they were getting ready for school. Tr. 47. He did, however, admit that he had some supervisory responsibility for the children when they returned home from school. *Id.* While the level of supervisory responsibility might have been less than that of full-time care, it still required Mr. Denton to interact with the children. Further, although Mr. Denton testifies that his symptoms wax and wane, he did not similarly testify regarding his child-care duties. This contradicts his assertion that during the two to four days where his headaches are severe, he

cannot do anything. Tr. 49, 51. Thus, the ALJ reasonably concluded that Mr. Denton's activities are inconsistent with his reported symptoms. *Cf. Molina*, 674 F.3d at 1113.

However, it was error for the ALJ to conclude that Mr. Denton's odd jobs, including lawn mowing and collecting scrap metal, were inconsistent with his alleged disability. Tr. 50. There is little evidence in the record regarding the frequency with which Mr. Denton performs these jobs, although based on his reported monthly income, $250 to $300, it is not often. *Id.* ("Once in a while I'll mow a lawn, or I'll pick up some scrap metal."). Because Mr. Denton only reported intermittent incapacitation due to his headaches—four to nine days per month—he has can easily perform these tasks when he is asymptomatic. *E.g.*, Tr. 383. These activities are not inconsistent with Mr. Denton's reported symptoms and, therefore, are not a clear and convincing reason to find him not credible.

### 3.        Objective Medical Evidence

Regarding Mr. Denton's headaches, the ALJ found that there was no evidence "to support his allegations concerning the frequency, severity, and duration." Tr. 21. A lack of objective medical evidence, standing alone, may not serve as a clear and convincing reason to discredit the claimant's credibility when the ALJ has already determined that the claimant's impairments could produce some of the symptoms alleged. *See Rollins*, 261 F.3d at 857 ("[T]he medical evidence is still a relevant factor in determining the severity of the claimant's [symptoms].") (citation omitted); *Reddick*, 157 F.3d at 722. Here, however, the ALJ has already offered two legally sufficient reasons for discounting Mr. Denton's testimony.

Moreover, although Mr. Denton only argues that there was medical evidence of the underlying condition, he does not point to any evidence in the record, other than his testimony, to support the alleged severity of his headaches. Pl.'s Br. at 15. Indeed, Dr. Bates-Smith reported

OPINION AND ORDER, Page 12

that although she believed Mr. Denton had headaches, she concluded his "credibility is mixed" when describing the level of severity and the resulting impact on his ability to work. Tr. 383. Further, where Mr. Denton complained of headaches, the treating physician did not note any extraordinary pain symptoms. *See, e.g.*, Tr. 285, 294, 303. Thus, it was not error for the ALJ to conclude that Mr. Denton's was not credible with respect to his headache symptom testimony.

In sum, although the ALJ erroneously relied on evidence of Mr. Denton's odd jobs, the ALJ has otherwise offered clear and convincing reasons supported by substantial evidence in the record for finding Mr. Denton not credible. Thus, the error is harmless and the ALJ's credibility finding is therefore affirmed. *See Carmickle*, 533 F.3d at 1162.

## B.    Medical Evidence

Mr. Denton argues that the ALJ erred by failing to discuss the opinion of Drs. Dhaliwal and Suckow and for improperly considering the opinions of Drs. Sally and Bates-Smith. Pl.'s Br. at 8–14. An ALJ must determine the weight to give each source of evidence. 20 C.F.R. § 416.927(d), (f). Opinions from "acceptable medical sources" may generally be accorded more weight than those from "other sources." *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996); 20 C.F.R. § 416.913. An ALJ may wholly or partially discount the opinion of any source, but the regulations and Ninth Circuit case law establish specific standards that an ALJ must apply in order to do so. *See* 20 C.F.R. § 416.627 (standards for evaluating medical opinions); *Lester v. Chater*, 81 F.3d 821, 830–33 (9th Cir. 1995) (standards for evaluating acceptable medical sources); *Dodrill*, 12 F.3d at 918–19 (standards for evaluating other sources). An ALJ may only reject the opinion of a doctor who has examined a claimant in favor of the differing opinion of a non-examining doctor if the ALJ "gives specific, legitimate reasons for doing so, and those

reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). The standard, however, is more exacting if the ALJ seeks to reject a treating physician's uncontradicted opinion. In that instance, the ALJ may only reject the treating physician's opinion if the ALJ provides "'clear and convincing' reasons" for doing so. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 725).

### 1.      Drs. Dhaliwal and Suckow

Drs. Dhaliwal and Suckow treated Mr. Denton while he was incarcerated; the records span September 15, 2006, through September 10, 2007. Tr. 272–308. Dr. Dhaliwal was Mr. Denton's primary physician; he made both psychiatric and physical diagnoses and managed Mr. Denton's medication. Dr. Suckow was a psychiatrist who twice met formally with Mr. Denton. Tr. 278, 303–04. Initially, Mr. Denton was diagnosed with both schizophrenia and depression. *E.g.*, Tr. 298, 294. The diagnosis of schizophrenia, however, was not endorsed after October 2006. Tr. 286. The notes reveal that Mr. Denton intermittently complained of linked migraines and neck pain, although there was an occasional reference to tooth pain. Tr. 278, 280, 285.

Dr. Suckow twice assigned Mr. Denton a Global Assessment of Functioning ("GAF") score of 40. Tr. 303–04. The ALJ, however, accepted the testimony of a medical expert who testified at the hearing, Dr. Moore, that a GAF score reflects issues going beyond mental health, including environmental stressors—incarceration—and physical issues—headaches. Tr. 19, 40. Further, the ALJ cited evidence of Mr. Denton's daily activities—occasional shopping, driving, and management of personal finances—contradictory to the assignment of a GAF score of 40.[3]

_____

[3] The Court further notes, Dr. Suckow's notes from October 3, 2006, indicate no basis for a GAF score of 40, except that Mr. Denton was suffering auditory hallucinations, which Dr. Suckow described as "more [than] likely drug induced." Tr. 304; *see also* Tr. 303 (complaining of "panic anxiety" and requesting the dosage of his medication be increased).

Tr. 19. Therefore, the ALJ offered "specific and legitimate reasons" supported by substantial evidence in the record for rejecting the contradicted opinion of Dr. Suckow. *See Lester*, 81 F.3d at 830–31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Aside from Dr. Suckow's GAF assessments, the remaining records from Mr. Denton's incarceration are not medical opinions. *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions . . . reflect judgments about the nature and severity of your impairment(s) . . . and your physical or mental restrictions."). And, contrary to Mr. Denton's assertion, the ALJ explicitly considered these records. Tr. 19–21. As discussed above, the ALJ found evidence of the headaches, but concluded that "there is no evidence to confirm the alleged frequency and duration." Tr. 21; *see also* Tr. 19 (finding the headaches severe). This is entirely consistent with the notes recorded by Drs. Dhaliwal and Suckow, which mention the existence of headaches, but note neither severity nor frequency. *E.g.*, Tr. 284–85, 294.

Because the ALJ offered a specific and legitimate reason supported by substantial evidence for discounting Dr. Suckow's GAF scores and otherwise properly considered the residual medical notes, the ALJ's assessment of Drs. Dhaliwal and Suckow is affirmed.

## 2.      Dr. Sally

Dr. Sally performed a physical examination of Mr. Denton on August 9, 2008. She did not note any masses on Mr. Denton's neck nor a reduced range of motion; however, she did note that the range of motion in his back was limited by pain. Tr. 355. She also noted that Mr. Denton reported being unable to lift more than ten to fifteen pounds regularly because doing so would increase the risk of a neck spasm. Tr. 354. From this, Dr. Sally concluded that Mr. Denton was limited to lifting ten pounds occasionally and ten pounds frequently. Tr. 356.

The ALJ gave "significant weight" to Dr. Sally's opinion; however, he declined to adopt it insofar as it suggested Mr. Denton was limited to lifting ten pounds occasionally; instead, the ALJ found Mr. Denton limited to lifting twenty pounds occasionally. Tr. 21. The ALJ reasoned that Mr. Denton's activities, including mowing lawns and collecting scrap metal, as well as his testimony that he could lift fifty pounds occasionally, were inconsistent with the exertional limitation offered by Dr. Sally. *Id.* Further, the ALJ also gave significant weight to the opinion of Dr. Lahr, a reviewing physician, who disagreed with Dr. Sally's exertional limitation. Tr. 21–22.

Dr. Sally's opinion is contradicted by Dr. Lahr; therefore, the ALJ needed only to offer a specific and legitimate reason in order to discount it. *See Lester*, 81 F.3d at 830–31 (quotation omitted). As the ALJ properly noted, Mr. Denton indicated that he could lift fifty pounds occasionally and he occasionally mowed lawns and collected scrap metal. Tr. 50–51, 216. Therefore, the reasons offered are specific and legitimate because they contradict Dr. Sally's conclusion that Mr. Denton could only lift ten pounds occasionally. *See* 20 C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

Accordingly, the ALJ's rejection of Dr. Sally's functional limitation is affirmed.

### 3.    Dr. Bates-Smith

Dr. Bates-Smith performed a neuropsychological evaluation on Mr. Denton in April 2010. Tr. 373–83. In conducting the examination, Dr. Bates-Smith relied on Mr. Denton's self-reporting, the medical record, and a mental status exam. Tr. 373. Regarding Mr. Denton's headaches, Dr. Bates-Smith found that his "credibility was mixed," but she accepted "the *presence* of headaches"; however, she opined that independent verification of Mr. Denton's

reports of severity and frequency would be necessary to conclude that they have "a significant impact on working." Tr. 383.

The ALJ gave the opinion of Dr. Bates-Smith "significant weight" as it is "consistent with a capacity for simple, routine tasks with no public interaction and only superficial contact with coworkers." Tr. 21. Mr. Denton argues that despite according the opinion significant weight, the ALJ erred by rejecting limitations associated with his Mr. Denton's headaches and by failing to consider all of the limitations posed by Dr. Bates-Smith. Pl.'s Br. at 12–14.

Any limitations stemming from Mr. Denton's headaches were explicitly noted by Dr. Bates-Smith as being based on Mr. Denton's self-reporting. *E.g.*, Tr. 382 ("if we are to take Mr. Denton's word for the frequency and duration of headaches"). Dr. Bates-Smith reported these so as to give a complete picture of Mr. Denton's examination, but there is no indication that she gave them any credit or intended that they be incorporated into Mr. Denton's functional limitations absent corroborating evidence. *See* Tr. 382–83. Even accepting Mr. Denton's argument that it was error for the ALJ to ignore the parroted limitations, the ALJ was permitted to do so after having already found identical complaints by Mr. Denton not credible. *See Bray*, 554 F.3d at 1228.

Mr. Denton also argues that the ALJ erred by disregarding Dr. Bates-Smith's opinion that he has "difficulty conforming his behavior, understanding even simple instructions, and adjusting to changes in the workplace." Pl.'s Br. at 13. As an initial matter, Dr. Bates-Smith found that Mr. Denton had no difficultly processing simple instructions. Tr. 370. With regard to the remaining two limitations, Mr. Denton does not explain how they are not accounted for by the ALJ's RFC. Tr. 19. An inability to adjust to workplace changes is addressed by the ALJ's

finding that he was limited to work with "simple instructions and . . . *routine* tasks." *Id.*

(emphasis added). Similarly, an inability to conform one's behavior to community standards is

addressed through limits on interaction with others. *Id.* Thus, the ALJ's RFC is "consistent with

restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169,

1174 (9th Cir. 2008).

In sum, the ALJ's consideration of the medical evidence is free of legal error and based

on substantial evidence in the record. It is therefore affirmed.

## C.     Lay Witness Testimony

Mr. Denton asserts that the ALJ did not provide germane reasons to discount the lay

witness statements given by Ms. Bear and Ms. Fern. "Lay testimony as to a claimant's symptoms

is competent evidence that an ALJ must take into account, unless he or she expressly determines

to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v.

Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Both lay witnesses reported that Mr. Denton is unable

to eat or engage in other activities two to four times per month during the duration of his

headaches. Tr. 21–22. The ALJ considered these statements, but found them "not entirely

credible" because "there is no evidence of weight loss in the . . . record" and because "[t]here is

no evidence [Mr. Denton] has sought treatment for his headaches." Tr. 22.

Although the reasons may be germane to the testimony, they are not supported by the

evidence in the record. Mr. Denton's weight is only recorded a handful of times in the record

between August 2006 and August 2008. Tr. 298, 300, 354, 367.[4] Without a more detailed record

of Mr. Denton's weight, it is impossible to conclude whether it was fluctuating or static based on

---

[4] Moreover, in 2008, his weight only appears four times in the record. Tr. 354, 367.

intermittent two to three day fasts. Further, the scant evidence actually suggests that Mr. Denton indeed showed some weight fluctuation. Tr. 367 (fluctuating between 212 and 232 pounds in August 2008). Thus, the ALJ's reason is not supported by substantial evidence and is therefore erroneous.

The Commissioner concedes that the ALJ's second reason is erroneous. Def.'s Br. at 14. The ALJ also discounted the lay testimony because there was no evidence that Mr. Denton sought treatment for his headaches. Tr. 22. The Court agrees; Mr. Denton sought treatment for his headaches while he was in prison and was, at one point, prescribed sumatriptan succinate. *E.g.*, Tr. 285, 295.

Thus, the ALJ has failed to provide germane reasons for discounting the lay witness statements of Ms. Bear and Ms. Fern. The error, however, is harmless. *See Molina*, 674 F.3d at 1115–22.

The symptoms and limitations reported by the lay witnesses were nearly identical to those Mr. Denton self-reported. *Compare* Tr. 45–46, 50–52, *with* Tr. 257–58. Both lay witnesses report that Mr. Denton has severe headaches, the pain rendering him quiescent and unable to consume food without becoming nauseated. Tr. 257–58. However, as discussed above, the ALJ provided clear and convincing reasons for rejecting Mr. Denton's own testimony recounting identical symptoms. *See supra* pp. 7–13. Significantly, the ALJ found that some of Mr. Denton's activities of daily living—namely, providing limited childcare for a friend—were inconsistent with his claim regarding the severity and frequency of his headaches. Tr. 21. Therefore, it follows that the ALJ's error in discounting the lay witnesses' testimony is harmless because "the

same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *See id.* at 1122 (internal quotations omitted).

### D.    VE Testimony

In Mr. Denton's reply brief, he argues that the jobs testified to by the VE are facially incompatible with the RFC given by the ALJ. Pl.'s Reply at 8–9. Thus, because the VE failed to offer reasonable explanations for the discrepancies, the testimony is not based on substantial evidence. *Id.* Generally, the Court declines to consider arguments raised for the first time in a reply brief. *See Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F.Supp.2d 1078, 1089 (E.D.Cal.2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief."). However, even if this assignment of error was appropriately before the Court, it would fail.

When using the testimony of a VE, the ALJ must ask if "'the evidence he or she has provided' is consistent with the [DOT] and obtain a reasonable explanation for any *apparent* conflict." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting SSR 00-4p, *available at* 2000 WL 1898704) (emphasis added). A failure to inquire or receive a reasonable explanation is reversible error. *Id.*

At the hearing, the ALJ asked the VE if the jobs he testified to were consistent with the DOT, to which the VE replied that they were. Tr. 58. In response to a hypothetical claimant with the limitations given in the RFC, the VE testified that there were three jobs available Mr. Denton could perform: small products assembler (DOT 706.684-022); solderer (DOT 813.684-022); and paper sorter, recycler (DOT 649.687-010). Tr. 55–58.

Mr. Denton argues that all of the jobs are listed by the DOT as requiring "frequent reaching." Pl.'s Reply at 8. The ALJ found Mr. Denton was limited to "no overhead reaching and . . . to occasional reaching in other directions." Tr. 19. However, it is not apparent from the DOT that the occupations identified require overhead reaching or more than occasional reaching in other directions. *See* DOT 706.684-022; DOT 813.684-022; DOT 649.687-010.[5]

Thus, the ALJ's reliance on the VE testimony was proper and based on substantial evidence. It is therefore affirmed.

**E.    Duty to Develop the Record**

Finally, Mr. Denton argues that the ALJ did not adequately develop the administrative record because he failed to obtain identified, probative medical records and failed to request a neurological workup in order to further elucidate the severity and frequency of his headaches. Pl.'s Br. at 6–8. The ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288 (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). If the claimant is unrepresented, represented by a lay person, or suffering from a mental illness rendering him or her unable to protect his or her own interests, then "the ALJ must be especially diligent in exploring for all of the relevant facts." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence,

---

[5] Even assuming the definition of small products assembler conflicts with the hypothetical posed to the VE, the two remaining occupations—solderer and paper sorter, recycler—account for 3,500 jobs in the local economy. Tr. 57–58. Therefore, the ALJ's step five finding would still be based on substantial evidence. *See Barker v. Sec. of Health & Human Serv.*, 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266 jobs in regional economy constitutes significant numbers).

triggers the ALJ's duty to "'conduct an appropriate inquiry.'" *Id.* (quoting *Smolen*, 80 F.3d at 1288).

Mr. Denton was represented through the initial application and reconsideration process by non-attorneys working for the Hope Project. Tr. 124. After being denied benefits upon reconsideration, Mr. Denton retained the services of his current attorney, Merrill Schneider, on September 25, 2008. Tr. 136–37. Although Mr. Denton contends he was "not represented by counsel until just prior to the hearing" held June 3, 2010, his attorney had more than a year to prepare. Pl.'s Br. at 5. Moreover, Mr. Denton's assertion of prejudice stemming from his lack of representation because he missed three scheduled orthopedic examinations was remedied by his successful attendance at his August 8, 2008 examination with Dr. Sally, which the Court notes occurred *before* his retention of Mr. Schneider's firm. Tr. 353–57. Thus, the ALJ had no heightened duty to develop the record because Mr. Denton was represented by an attorney long before and at the hearing. *Tonapetyan*, 242 F.3d at 1150; *see also Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978) (discussing the ALJ's heightened duty resulting from the claimant being unrepresented *at* the hearing).

Mr. Denton also argues that the ALJ failed to obtain past medical records, particularly those he listed on Form SSA-3441. Pl.'s Br. at 6.[6] He argues that without these forms the

---

[6] The Court notes that Mr. Denton charges the ALJ with failing to obtain medical records beyond those listed on Form 3441. Pl.'s Br at 6. He does not identify with any specificity what medical records are missing. Further, he cites his lack of medical insurance as a reason for the paucity of medical evidence in the record. *Id.* When the ALJ is confronted with insufficient evidence with which to make a disability determination, he or she is required to, among other things, "request additional *existing* sources." *See* 20 C.F.R. § 416.920b(c)(2) (emphasis added). Here, however, there is no indication that any additional records exist; thus, the ALJ was permitted to make a disability determination on the evidence in the record. *See* 20 C.F.R. § 416.920b(d).

consultative opinions of Drs. Leland, Henninger, and Gardner were based on incomplete evidence. *Id.* On the form, submitted July 21, 2008, Mr. Denton listed Clackamas County Mental Health Center and Sheridan Federal Penitentiary ("FCI Sheridan") as possessing relevant medical records. Tr. 228–29. The record shows that the records were requested on July 23, 2008, with response received from Clackamas County on July 28, 2008 and from FCI Sheridan on August 5, 2008. Tr. 236; *see also* Tr. 352. Moreover, two of the allegedly hindered examinations occurred before Mr. Denton submitted the form. Tr. 311; Tr. 321. Further, Dr. Gardener did not find the record incomplete; rather, he noted the sources listed on Form SSA-3441 "are the same sources . . . found in the initial level and [are] already in the file." Tr. 359. Thus, there is no evidence that suggests the ALJ erroneously failed to obtain medical records.

Regarding the medical records kept during Mr. Denton's incarceration, he argues that they were not considered until after the medical reviews were conducted. Pl.'s Br. at 6–7. This assignment of error is not supported by the record. Two of the state reviewing physicians, Drs. Kennemer and Lahr, indicated that the records were in the file and Dr. Bates-Smith explicitly noted reviewing them. Tr. 358–61; 373–74. Further, the ALJ explicitly considered these as well. Tr. 20–21. Thus, Mr. Denton's medical records from his incarceration at FCI Sheridan were in the record and reviewed by at least three physicians and the ALJ.

Mr. Denton's final argument is that the ALJ erred by not following Dr. Leland's recommendation for a neurological workup for Mr. Denton's migraine headaches. Pl.'s Br. 7–8 (citing Tr. 319). At Mr. Denton's March 27, 2008 psychodiagostsic evaluation, Dr. Leland noted that "it would be helpful for him to have a neurological workup for his reported migraine headaches." Tr. 319. Although the ALJ relied on Dr. Leland's findings, he did not comment on

the doctor's recommendation that Mr. Denton be given a neurological workup. Tr. 20. At the hearing, Mr. Denton's attorney requested and was granted "neuro-psyche testing" related to Mr. Denton's cognitive functioning; however, a neurological workup for his headaches was neither requested nor ordered. Tr. 58.

There is evidence that Mr. Denton has consistently reported the occurrence of headaches. *See, e.g.*, Tr. 272–308. Drs. Leland, and Bates-Smith, concluded that his headaches could have a "significant impact on working" if there was evidence to support Mr. Denton's report of symptoms. Tr. 319, 383. To obtain this evidence, Dr. Leland suggested Mr. Denton undergo a neurological workup and Dr. Bates-Smith suggested using "an independent and reliable reporter." Tr. 383. Following this, the ALJ found Mr. Denton's headaches a severe disorder, yet also concluded that "[t]here is no evidence to support his allegations concerning [their] frequency, severity, and duration." Tr. 18, 21.

In *Tonapetyan*, the Ninth Circuit remanded for further development of the record because the ALJ heavily relied on the testimony of a doctor, yet ignored that doctor's equivocations, his concern over the lack of a complete record, and recommendation that a more complete report be obtained from the claimant's treating psychiatrist. *Tonapetyan*, 242 F.3d at 1150. Here, the ALJ gave "significant weight" to the opinion of Dr. Bates-Smith, including her suggestion that the severity of Mr. Denton's headaches needed independent confirmation. Tr. 21. However, the ALJ subsequently ignored the recommendations of Dr. Bates-Smith and Dr. Leland, concluding "there is no evidence to confirm the alleged frequency and duration of his headaches." *Id.* Given the lack of medical evidence indicating the severity of Mr. Denton's headaches and the suggestions by Drs. Leland and Bates-Smith that a further examination might corroborate those

symptoms, the record before the ALJ was incomplete. *See, e.g.*, *Tonapetyan*, 242 F.3d at 1150–

51 (The ALJ "was not free to ignore [the doctor's] specific recommendation."); *Shafer v.*

*Barnhart*, 120 F. App'x 688, 693 (9th Cir. 2005) (quoting SSR 96-7p, *available at* 1996 WL

374186) ("'The adjudicator must develop evidence . . . [of an impairment,] when the record

contains information to suggest that such an impairment exists, and the individual alleges pain or

other symptoms, but the medical signs and laboratory findings do not substantiate any physical

impairment(s) capable of producing the pain or other.'").

Thus, the ALJ erred by failing to order a neurological examination for Mr. Denton. *See*

*Tonapetyan*, 242 F.3d at 1150–51; *see also* 20 C.F.R. § 416.919a(a) ("If we cannot get the

information we need from your medical sources, we may decide to purchase a consultative

examination.").

**F.    Remand**

The court may, in its discretion, order an immediate payment of benefits. In "Social

Security Act cases Congress has granted district courts the additional power to reverse or modify

an administrative decision without remanding the case for further proceedings." *Harman v.*

*Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). The Ninth Circuit has set forth a three-part test

for determining whether to remand a case for further proceedings or for the immediate award of

benefits. The immediate payment of benefits is appropriate where: (1) the ALJ failed to provide

legally sufficient reasons for rejecting the claimant's testimony; (2) no outstanding issues remain

for the ALJ to resolve; and (3) it is clear from the record that the ALJ would be required to find

the claimant disabled were such testimony credited. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th

Cir. 2004).

As discussed above, the ALJ failed to develop the record with regard to the severity, frequency, and duration of Mr. Denton's headaches. However, because the record needs further development, the Court concludes that there are outstanding issues that must be resolved before a determination of disability can be made.

Upon remand, the ALJ shall make further inquiry into the severity, duration, and frequency of Mr. Denton's headaches. In doing so, the ALJ should obtain clarifying statements from Mr. Denton's examining physicians, if needed, and order a neuropsychological examination, if appropriate. Based on the new evidence, the ALJ shall reassess the record and then, if needed, make adjustments to Mr. Denton's RFC.

## IV.    CONCLUSION

For the reasons stated above, the Commissioner's decision that Mr. Denton is not disabled is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

DATED this 19th day of September, 2012.


/s/ Michael H. Simon                     
Michael H. Simon
United States District Judge

OPINION AND ORDER, Page 26